IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

RODNEY V. JOHNSON,

    Plaintiff,

v.                                                                No. 04-2372 B

MENLO WORLDWIDE LOGISTICS,

    Defendant.

_____

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

INTRODUCTION

On May 18, 2004, the instant lawsuit, initiated by the pro se Plaintiff, Rodney V. Johnson, was removed to this Court from the General Sessions Court of Shelby County, Tennessee. Before the Court is the motion of the Defendant, Menlo Logistics, Inc. d/b/a Menlo Worldwide Logistics ("Menlo"), seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims set forth in Johnson's amended complaint, filed May 24, 2004, in which he alleged that the Defendant (1) engaged in unlawful discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.; (2) violated the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, et seq.; (3) breached a settlement agreement entered into between the parties; and (4) "[withheld] monies due."

STANDARD OF REVIEW

Rule 56 states in pertinent part that a

> . . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on her pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S.Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## FACTS

At the outset, the Court notes that, in addition to the May 24, 2004 amended complaint, Plaintiff filed an "Amended Complaint and Pleadings" on June 3, 2005, consisting in part of rambling accusations not contained in the first amended complaint. Fed. R. Civ. P. 15 permits a party to "amend the party's pleading once as a matter of course. . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). Thus, while the May 24, 2004 amendment was allowed under Rule 15, the June 3 filing was not, as there is nothing in the record to suggest the Plaintiff received or even sought leave of the

Court or consent from the Defendant to do so.  The June 3 filing is therefore STRICKEN from the record and will not be considered by the Court.[1]

According to the motion papers, Johnson was an employee of Menlo from December 26, 2001 until his termination on December 24, 2003.  During the period of his employment and thereafter, the Plaintiff filed four discrimination charges with the Equal Employment Opportunity Commission (the "EEOC"), three of which were dismissed by the agency and one that was settled by the parties.

The first charge was filed April 22, 2002 ("Charge 1") alleging race discrimination and retaliation, stating that

> I have been subjected to unequal terms and conditions of employment in regard to approval of vacation and use of restroom in the shipping area.  I was unjustifiably issued a final disciplinary warning on April 14, 2002.  I am classified as a Warehouse Associate and have been employed since December 2001.
>
> I believe I have been discriminated against because of my race (Black) and retaliated against because I challenged the manner in which the Operations Manager had comprised working teams.  I have been denied the opportunity to take vacation time whereas other employees have been granted this opportunity.  The supervisor of the shipping department has questioned my use of the bathroom in his department.  To my knowledge, he does not question white employees when they use the same bathroom.

(Def.'s Mot. for Summ. J. and Supporting Mem., Ex. 1).  The EEOC issued a right to sue notice on August 29, 2002.

The second EEOC claim ("Charge 2") was initiated on June 10, 2003, claiming race

---

[1] While the scheduling order entered May 6, 2005 set the deadline for amending pleadings at June 3, 2005, this had no effect on the Rule 15 requirement for leave of Court or consent of the opposing party prior to the filing of an amended pleading.  Like all other litigants, even those acting pro se must follow the Federal Rules of Civil Procedure.  See Ward v. Musselwhite, Meinhart & Staples, No. Civ.A. 3:05-CV-202-S, 2005 WL 2260397, at *2 (W.D. Ky. Sept. 13, 2005).

discrimination based on Menlo's October 16 and November 16, 2002 denials of promotion to the Plaintiff from a warehouse associate to a shipping and receiving supervisor.  Johnson averred that no reason was given for his non-selection and that he was not so much as interviewed.  The parties engaged in voluntary mediation and entered into an EEOC settlement agreement on September 8, 2003.  Under the agreement, Menlo agreed generally that "there shall be no discrimination or retaliation of any kind against any person because of opposition to any practice deemed illegal under . . . Title VII[] as a result of filing [the] charge."  (Def.'s Mot. for Summ. J. and Supporting Mem., Ex. 4 ("Settlement Agreement") at ¶ 4).  Specifically, the Defendant agreed to "institute a policy whereby all job bids must be submitted to the Office Manager/Human Resources Associate for promotion/transfer consideration.  All job bids will be acknowledged, and the unsuccessful candidate will be notified."  (Settlement Agreement at ¶ 7(A)).  Menlo further agreed "to interview all internal candidates that submit a job bid.  Internal candidates may contact any member of management regarding non-selection."  (Settlement Agreement at ¶ 7(B)).  The Defendant assented to the training supervisors and management regarding proper procedures and to refraining from retaliation against Johnson.  (Settlement Agreement at ¶¶ 7(C) & (D)).  The Plaintiff was advised to promptly notify management in the event harassment or discriminatory conduct occurred.  (Settlement Agreement at ¶ 7(C)).  In exchange for the promises of the employer, Johnson agreed "not to institute a law suit under Title VII."  (Settlement Agreement at ¶ 1).

Two months later, a third charge ("Charge 3") was brought before the EEOC, in which the Plaintiff contended as follows:

> I have and continue to be treated differently in terms and conditions of my employment while working for the above named employer as a Forklift Operator. Specifically, I have been denied reasonable accommodations with respect to leave for medical reasons.  The employer is well aware of my disability and has pledged

>  to accommodate me in the past. However, because of a previous charge of discrimination I filed against the company, leave requests that have been approved in the past for medical reasons are no longer accepted. Furthermore, I am frequently asked by the Operations Manager about my disability and the medications I am required to take and their purposes. . . .
>
>  I believe I have been and continue to be retaliated against because I filed a previous charge of discrimination in violation of the Americans with Disabilities Act (ADA).[2]

(Def.'s Mot. for Summ. J. and Supporting Mem., Ex. 5.)  The EEOC issued a right to sue letter on February 11, 2004.

> Johnson made his final EEOC charge on January 9, 2004 ("Charge 4"), alleging that
>
> [he] was discharged from the position of Forklift Operator by the above named employer on December 26, 2003. The reason given for [his] discharge was "violation of work rules," and that [his] attendance was unacceptable. [He] had medical days counted against [him] which occurred prior to [his] filing a previous charge ADA charging of discrimination. [He] filed the charge approximately one and a half months earlier against the company. . . .

(Def.'s Mot. for Summ. J. and Supporting Mem., Ex. 7.)  The Plaintiff maintained that he was "retaliated against for filing a previous charge of discrimination in violation of the American with Disabilities Act (ADA)."  (Def.'s Mot. for Summ. J. and Supporting Mem., Ex. 7.)  A notice of right to sue was issued on January 15, 2004.

## ANALYSIS OF THE PARTIES' POSITIONS

<u>Breach of EEOC Agreement.</u>

The Defendant first argues that Johnson's claims for breach of the EEOC settlement agreement are barred for failure to exhaust administrative remedies.  It is well settled that an individual claiming to have been discriminated against under Title VII may not bring suit in federal court unless he has first exhausted his administrative remedies.  See <u>Haithcock v. Frank</u>, 958 F.2d

---

[2]The Court has no record of any previous ADA charge presented to the EEOC.

671, 675 (6th Cir. 1992) (citing Brown v. Gen. Servs. Admin., 425 U.S. 820, 832, 96 S.Ct. 1961, 1967-68, 48 L.Ed.2d 402 (1976)).

> The requirement that the plaintiff exhaust administrative remedies prior to instituting suit is intended to ensure that the Commission will have been afforded an opportunity to attempt conciliation and voluntary settlement, the preferred means for resolving employment discrimination disputes.  In recognition of the central role afforded the conciliation process under [Title VII], the applicable authorities have repeatedly rebuffed attempts by Title VII plaintiffs to bypass favored administrative remedies.

Parsons v. Yellow Freight Sys., Inc., 741 F.2d 871, 873 (6th Cir. 1984) (internal citations and quotation marks omitted).  In Parsons, the exhaustion requirement was specifically applied to a suit seeking enforcement of a Title VII settlement agreement on which, as is the case here, the EEOC was a signatory.  Id. at 872-74.  The court concluded that a plaintiff may not avoid the exhaustion requirement by suing to enforce the contract under state law, affirming the district court's finding that "where a private plaintiff seeks to enforce a settlement agreement resulting from a Title VII proceeding involving employment discrimination the plaintiff must follow the administrative proceedings of Title VII before bringing a claim based on common law breach of contract" Id. at 874; see also Kinley v. Norfolk S. Ry. Co., 230 F.Supp.2d 770, 778 (E.D. Ky. 2002).  Thus, the plaintiff must file "a timely charge that encompasses the pertinent subject matter of his claim and [receive] a Right to Sue letter based upon that charge." Kinley, 230 F.Supp.2d at 778.  As there is nothing before the Court to suggest the Plaintiff filed an EEOC charge alleging breach of the agreement, summary judgment must be granted.  See Parsons, 741 F.2d at 873-74 (summary judgment appropriate where plaintiff in breach of EEOC agreement suit failed to exhaust administrative remedies); Kinley, 230 F.Supp.2d at 778 (same).

Title VII Claims.

Second, Menlo avers that the Plaintiff's claims under Title VII are time-barred. The only EEOC charges implicating Title VII are Charges 1 (race discrimination and retaliation) and 2 (race discrimination). A Title VII plaintiff must file a civil action within 90 days of his receipt of right to sue from the EEOC. 42 U.S.C § 2000e-5(f)(1); Seay v. Tenn. Valley Auth., 339 F.3d 454, 469 (6th Cir. 2003).[3]

As outlined above, it is not disputed that the EEOC issued right to sue letters on Charges 1 and 2 on August 29, 2002 and September 9, 2003, respectively. Johnson has offered no evidence that he failed to timely receive the notices or that they were defective in any respect. Therefore, the Plaintiff's original state court complaint of April 20, 2004, filed far outside the 90-day limit for suits under Title VII, was untimely as to Charges 1 and 2. Accordingly, the Defendant's motion for summary judgment on Johnson's Title VII claims arising from those EEOC charges is granted. See A've v. Serv. Employees Int'l Union, 24 F.App'x 326, 329-30 (6th Cir. 2001) (complaint filed more than 90 days after receipt of right to sue notice was untimely and dismissal appropriate).

---

[3] Since the 90-day requirement is not jurisdictional, "a court may apply equitable tolling, which permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." Seay, 339 F.3d at 469 (citing EEOC v. Ky. State Police Dep't, 80 F.3d 1086, 1095 (6th Cir. 1996)) (internal quotation marks omitted). In determining whether equitable tolling should be permitted, the Court is to consider the following five factors:

> 1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.

Id. (quoting Truitt v. County of Wayne, 148 F.3d 644, 648 (6th Cir. 1998)). Courts are admonished that "the doctrine of equitable tolling is restricted and to be carefully applied." Id. As the Plaintiff herein has failed, either in his complaint or his response to the instant motion, to allege the existence of any of the factors set forth above, the Court cannot find that equitable tolling permits Johnson to avoid the statute of limitations.

ADA Claims.

Next, Menlo maintains that the Plaintiff has failed to state a claim[4] as to his allegations under the ADA. The ADA prohibits covered entities, including private employers such as the Defendant, from discriminating against "a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a); Sutton v. United Airlines, Inc., 527 U.S. 471, 477-78, 119 S.Ct. 2139, 2144, 144 L.Ed.2d 450 (1999). "Unlawful discrimination includes firing an individual because of his disability." Moorer v. Baptist Mem'l Health Care Sys., 398 F.3d 469, 479 (6th Cir. 2005), reh'g en banc denied (Apr. 15, 2005) (citing 42 U.S.C. § 12112(a)). "The prima facie case of disability discrimination requires the plaintiff to prove that: (1) he is an individual with a disability; (2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodations; and (3) he was discharged solely by reason of his handicap." Williams v. London Util. Comm'n, 375 F.3d 424, 428 (6th Cir. 2004) (citations and internal quotation marks omitted). "If the plaintiff can prove a prima facie case, then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination. Then, the burden shifts back to the plaintiff to prove that the stated reasons are pretext." Id. However, the ultimate burden of proof

---

[4]While the Defendant's argument as to the ADA claim is couched as one for failure to state a claim upon which relief can be granted, a request governed by Fed. R. Civ. P. 12(b)(6), the Court will consider the question in accordance with Rule 56. Under Rule 12(b)(6), the court's narrow inquiry "is based upon whether 'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged." Osborne v. Bank of Am., Nat'l Ass'n, 234 F.Supp.2d 804, 807 (M.D. Tenn. 2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)). The Rule further provides that, "[i]f, on a motion asserting the defense number (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . ." Fed. R. Civ. P. 12(b). As Menlo has submitted to the Court for its review documents, including copies of the EEOC charges referring to the ADA claim, analysis under Rule 56 is appropriate.

remains at all times with the plaintiff. Brenneman v. MedCentral Health Sys., 366 F.3d 412, 418 (6th Cir. 2004), cert. denied, 543 U.S. 1146, 125 S.Ct. 1300, 161 L.Ed.2d 107 (2005).

An ADA plaintiff may prove discrimination based upon his disability either through direct or indirect evidence. Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 452 (6th Cir.), cert. denied, 543 U.S. 817, 125 S.Ct. 68, 160 L.Ed.2d 25 (2004). Both require the plaintiff to show he is disabled. Id. at 452-53. It is the position of the Defendant that Johnson has failed to establish disability. Under the statute, the term "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 193, 122 S.Ct. 681, 689, 151 L.Ed.2d 615 (2002).

In his response to the dispositive motion, the Plaintiff maintains that he was at some point diagnosed with "acute depressive disorder" and "was on Short Term Disability while being treated and observed for this condition." He also states that he had a "nervous breakdown" and had to miss work on the day he was fired. Further, Johnson submits that he "still complained of back pain resulting from an injury sustained at the defendant[']s work site" and that he was "injected with medication to help reduce the inflammation that had developed."

However, "[m]erely *having* an impairment does not make one disabled for purposes of the ADA." Toyota Motor Mfg., 534 U.S. at 195, 122 S.Ct. at 690 (emphasis added). In Sutton, the Supreme Court cautioned that a disability "exists only where an impairment 'substantially limits' a major life activity," which requires a showing of "considerable" limitation or one that limits a major life activity "to a large degree." Sutton, 527 U.S. at 491, 119 S.Ct. at 2150; Agnew v. Heat Treating

Servs. of Am., No. 04-2531, 2005 WL 3440432, at *4 (6th Cir. Dec. 14, 2005) (citing Sutton). In order to be "substantially limited" in a major life activity, "an individual must have an impairment that prevents or severely restricts" him from performing daily activities. Toyota Motor Mfg., 534 U.S. at 198, 122 S.Ct. at 691. He must be "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii); see also Fraser v. Goodale, 342 F.3d 1032, 1040 (9th Cir. 2003), cert. denied sub nom. U.S. Bancorp v. Fraser, 541 U.S. 937, 124 S.Ct. 1663, 158 L.Ed.2d 358 (2004). It is not sufficient to suffer *some* limit. Fraser, 342 F.3d at 1040. A "major life activity" includes "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). An individual must "offer evidence that the extent of the limitation caused by [his] impairment in terms of [his] own experience is substantial." Toyota Motor Mfg., 534 U.S. at 185, 122 S.Ct. at 685. In addition, the impact of the impairment must be "permanent or long term." Id. at 198, 122 S.Ct. at 691. In Toyota Motor Manufacturing, the Supreme Court instructed that the standard for qualifying as "disabled" under the ADA was a demanding one to be interpreted strictly. Id. at 197, 122 S.Ct. at 691.

The Plaintiff in this case has offered no evidence whatsoever to show he was disabled during his employment with Menlo.[5] Even if the Court were to take as true the Plaintiff's bald, unsupported

---

[5]Curiously, the Plaintiff has attached to his response two doctor's reports dated September and October 2005, reflecting prescription of Naprosyn and therapy for contusions and lumbar strain. The documents contain no information which would indicate that the Plaintiff suffered from any condition during his employment. Thus, they are irrelevant to the Court's inquiry.

assertions that he suffered from depression, a nervous breakdown, inflammation and back pain,[6] he has completely failed to allege that these conditions substantially limited a major life activity, much less offered evidence to support such a claim. See Agnew, 2005 WL 3440432, at *5 (plaintiff's "bad back" was a condition, but not a "disability" absent evidence that it substantially limited major life activity); English v. PNC Bank, 157 F.App'x 501, 503 (3rd Cir. 2005) (depression diagnosis not sufficient in itself to demonstrate "disability" absent showing that it substantially limited a major life activity); Frazier v. Delco Elec. Corp., 263 F.3d 663, 668 (7th Cir. 2001) (nervous breakdown in itself not a "disability" for purposes of ADA); Carter v. Potter, No. Civ.A.02-7326, 2004 WL 2958428, at *3-4 (E.D. Pa. Dec. 21, 2004) (inflammation that did not substantially limit major life activity not a "disability"). Accordingly, as he cannot demonstrate, as he must, that he is "disabled," the motion for summary judgment as to Johnson's ADA discrimination claim is GRANTED. See Agnew, 2005 WL 3440432, at *4-6 (plaintiff's failure to produce sufficient evidence to create a genuine issue of material fact on whether he had a disability that substantially limited a major life activity warranted summary judgment); Gardull v. Perstorp Polyols, Inc., 382 F.Supp.2d 960, 965 (N.D. Ohio 2005) (same).

The ADA also prohibits an employer from retaliating against an employee who files a charge with the EEOC alleging violation of the statute. 42 U.S.C. § 12203(a). In order to establish ADA retaliation, the plaintiff must demonstrate that "(1) [he] engaged in protected activity; (2) the exercise of [his] civil rights was known by the defendant; (3) the defendant thereafter took adverse

---

[6] Evidence of a diagnosis of these or any other "conditions" would not have been sufficient to show "disability" in any case. See Toyota Motor Mfg., 534 U.S. at 198, 122 S.Ct. 691 ("It is insufficient for individuals attempting to prove disability . . . to merely submit evidence of a medical diagnosis of an impairment").

11

employment action; and (4) a causal connection exists between the protected activity and the adverse employment action." Hibbler v. Regional Med. Ctr. at Memphis, 12 F.App'x 336, 340 (6th Cir. 2001) (citing Walborn v. Erie County Care Facility, 150 F.3d 584, 588-89 (6th Cir.1998)).[7] "If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment action. The plaintiff, of course, bears the ultimate burden of proving that the proffered reason for the action was merely a pretext for discrimination." Penny v. United Parcel Serv., 128 F.3d 408, 417 (6th Cir. 1997).

Although the Defendant makes reference to and acknowledges in its motion for summary judgment that Johnson has set forth a claim of ADA retaliation and in general terms seeks dismissal of his ADA claims in their entirety, it does not offer any direct argument concerning the retaliation claim. There is no dispute that the Plaintiff has shown that he engaged in protected activity, that is, that he filed a charge with the EEOC (Charge 3) alleging violation of the ADA. See Land v. Midwest Office Tech., Inc., 114 F.Supp.2d 1121, 1140 (D. Kan. 2000) (filing of an EEOC charge constitutes a "protected activity" under the ADA). Menlo does not argue that it was unaware of the charge. It is also undisputed that the Plaintiff suffered an adverse employment action in being fired. See DiCarlo v. Potter, 358 F.3d 408, 420 (6th Cir. 2004) (termination qualifies as an "adverse employment action" in ADA retaliation case).

The question turns then on the final factor: whether the Plaintiff has shown a causal connection between the filing of Charge 3 and his termination. This circuit has held that temporal

---

[7]Unlike an individual seeking relief for ADA discrimination, an ADA retaliation plaintiff is not required to show that he was "disabled." See Soileau v. Guilford of Maine, Inc., 928 F.Supp. 37, 46 n.6 (D. Me. 1996), aff'd, 105 F.3d 12 (1st Cir. 1997) (a plaintiff need not be disabled in order to prevail on an ADA retaliation claim).

proximity may be sufficient to establish causation at the prima facie stage.[8] See Chandler v. Specialty Tires of Am., 283 F.3d 818, 826 (6th Cir. 2002); Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 314-15 (6th Cir. 2001). However, the Supreme Court instructs that, where temporal proximity alone forms the basis of the causation element, such proximity "must be very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001), reh'g denied, 533 U.S. 912, 121 S.Ct. 2264, 150 L.Ed.2d 248 (June 11, 2001) (internal quotation marks omitted). In this case, Charge 3 was initiated on November 12, 2003. Johnson was fired on December 24, 2003, some six weeks later. The Court finds that this period of time is sufficient to establish a prima facie case of retaliation under the ADA. See Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) (seven weeks sufficiently close in time to permit temporal proximity to satisfy causation element of prima facie retaliation case); Ward v. Wal-Mart Stores, Inc., 140 F.Supp.2d 1220, 1230-31 (D.N.M. 2001) (period of less than a month raises inference of causation).[9]

As previously stated, upon a showing by the plaintiff of a prima facie case of retaliation, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for its action. See Penny, 128 F.3d at 417. However, in failing to submit any argument whatever in support of

---

[8]This is not to say that mere temporal proximity would be equally sufficient to carry the day at the ultimate issue stage. "A plaintiff's burden in establishing a prima facie case is not intended to be an onerous one." Skrjanc, 272 F.3d at 315. However, "such temporal proximity is insufficient in and of itself to establish that *the employer's nondiscriminatory reason for discharging an employee was in fact pretextual.*" Id. at 317 (emphasis added). For reasons set forth herein, the Court does not at this juncture reach the issue of whether temporal proximity would be sufficient to rebut Menlo's proffered nondiscriminatory reason for firing the Plaintiff.

[9]In making its decision, the Court is mindful that it is to construe the pleadings of pro se litigants liberally. See Ratliff v. United States, 999 F.2d 1023, 1026 (6th Cir. 1993) (recognizing that such filings should be afforded liberal construction).

summary judgment on the retaliation claim, it cannot be said, and the Court is not willing to assume, that the Defendant has satisfied its burden of production at this stage of the analysis. Accordingly, as the Court is unable to find based on what is before it that there is no genuine issue of material fact and that Menlo is entitled to judgment as a matter of law on the ADA retaliation issue, the Defendant's motion is DENIED to the extent it seeks summary judgment as to that claim.

Withholding of Monies Due.

Finally, the Defendant submits that this claim should be dismissed based on the Plaintiff's failure to offer facts in support thereof, the legal basis therefor, or the amount owed. The Court is in agreement with Menlo's position and the claim is DISMISSED.[10]

## CONCLUSION

Based on the foregoing, the Defendant's motion for summary judgment is DENIED as to the Plaintiff's claim of retaliation under the ADA and is GRANTED as to the remainder.

IT IS SO ORDERED this 9th day of March, 2006.

                                         s/ J. DANIEL BREEN
                                         UNITED STATES DISTRICT JUDGE

---

[10] It could be that the Plaintiff has abandoned this claim in any case, as he did not respond to the Defendant's assertion in his response to the motion.