IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

RODNEY V. JOHNSON,

    Plaintiff,

v.                                                                         No. 04-2372 B

MENLO WORLDWIDE LOGISTICS,

    Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DISMISSING CASE
_____

INTRODUCTION

On March 9, 2006, this Court granted in part and denied in part the motion for summary judgment filed by the Defendant, Menlo Logistics, Inc. d/b/a Menlo Worldwide Logistics ("Menlo"). In its order, the Court granted summary judgment in favor of the Defendant as to all claims alleged in this action by the pro se Plaintiff, Rodney V. Johnson, with the exception of a claim of retaliation under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, et seq. Currently before the Court are the April 3, 2006 motions of the Defendant to dismiss and for summary judgment with respect to the remaining claim. As it is dispositive of the case, the Court will only address the Defendant's motion for summary judgment, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

STANDARD OF REVIEW

Rule 56 states in pertinent part that a

> . . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56©; see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S.Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## FACTS

The facts material to the ADA retaliation claim are as follows. Johnson was an employee of Menlo from December 26, 2001 until his termination on December 24, 2003. On January 9, 2004, he filed a charge with the Equal Employment Opportunity Commission alleging that

> [he] was discharged from the position of Forklift Operator by the above named employer on December 26, 2003. The reason given for [his] discharge was "violation of work rules," and that [his] attendance was unacceptable. [He] had medical days counted against [him] which occurred prior to [his] filing a previous charge ADA charging of discrimination. [He] filed the charge approximately one and a half months earlier against the company. . . .

2

(Def.'s Mot. for Summ. J. and Supporting Mem., Ex. 7.)  A notice of right to sue was issued on January 15, 2004.

ANALYSIS OF THE PARTIES' POSITIONS

The ADA prohibits an employer from retaliating against an employee who files a charge with the EEOC alleging violation of the statute.  42 U.S.C. § 12203(a).  In order to establish ADA retaliation, the plaintiff must demonstrate that "(1) [he] engaged in protected activity; (2) the exercise of [his] civil rights was known by the defendant; (3) the defendant thereafter took adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action."  Hibbler v. Reg'l Med. Ctr. at Memphis, 12 F.App'x 336, 340 (6th Cir. 2001) (citing Walborn v. Erie County Care Facility, 150 F.3d 584, 588-89 (6th Cir.1998)).  "If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment action.  The plaintiff, of course, bears the ultimate burden of proving that the proffered reason for the action was merely a pretext for discrimination."  Penny v. United Parcel Serv., 128 F.3d 408, 417 (6th Cir. 1997).

In its previous order, the Court concluded that the Plaintiff had established a prima facie case of retaliation under the ADA.  Based on the Defendant's failure to come forward with a legitimate nondiscriminatory reason for Johnson's termination, the Court denied the motion for summary judgment without proceeding with the remainder of the burden shifting analysis.  The Defendant has attempted in its most recent motion for summary judgment to present such evidence.

It is Menlo's position that Johnson was fired for excessive unexcused absences.  The Defendant's attendance policy provides that "[a]bsence and tardiness in excess of reasonable patterns and work expectations will be subject to discipline up to and including termination of employment."

(Decl. of Mary Britt ("Britt Decl."), Ex. A)  The Plaintiff acknowledged his receipt of the policy in writing on February 14, 2002.  (Britt Decl., Ex. B)

Mary Britt, the highest ranking human resources officer at Menlo's Memphis, Tennessee facility, asserted in her declaration, attached as an exhibit to the instant motion, that she received all correspondence from the EEOC and was responsible for investigating EEOC charges and requests for information.  (Britt Decl. at ¶ 5)  This information is kept strictly confidential and managers are advised of EEOC matters only if directly implicated in an investigation.  (Britt Decl. at ¶ 6)  According to Britt,

> . . . Menlo provides up to 12 weeks of medical leave for all employees.  In 2003, Mr. Johnson used all 12 weeks by taking off from January 10 - March 30, and from June 2 -5.  Additionally, he was granted a non-[Family and Medical Leave Act ("FMLA")] medical leave of absence from June 6 - 16. . . .
>
> Mr. Johnson was eligible for two weeks of vacation time.  He exhausted all 10 of his vacation days in 2003, using his final vacation day on October 10.
>
> Additionally, Mr. Johnson had 9 unexcused absences from January 1, 2003 through August 22, 2003.

(Britt Decl. at ¶¶ 11-13)

On August 20, 2003, Julie Tyler-Brown, Menlo's human resources area manager, issued a letter to Johnson stating in part as follows:

> Your letter dated August 20, confirms that you failed to report to work on August 11, 12, 15, 18, and 19, 2003.  Prior to this date you have requested time off using your eligible applicable benefits, including Family Medical Leave, sick pay, and vacation pay.  In addition, you were granted a Personal Leave of Absence from June 4 - June 17, 2003.  At this point, as stated in our letter dated August 19th, you have exhausted any available time off under Family Medical Leave, sick pay, and vacation pay.

(Def.'s Mot. for Summ. J. and Supp. Mem., Ex. 4)  Eight days later, Britt sent another letter to the Plaintiff advising him that

4

> [i]n accordance with Menlo's Work Rules on attendance, an associate may be disciplined up to including [sic] termination of employment, for excessive unexcused absenteeism. Based on your current attendance record for 2003, you have a total of 9 unexcused absences for the year.
>
> As such, any further absence from work, outside an approved Leave of Absence, will require you to provided [sic] a note from your physician stating that you are unable to report to work, as well as that you are approved to return to work noting any restrictions.

(Britt Decl., Ex. D)

Nonetheless, Johnson submitted on November 5, 2003 a written request for time off (from November 6 through 10) which was not approved. (Britt Decl., Ex. E)  The Plaintiff noted on the request form that he "was advised that Menlo has a rule that if you have exhausted all sick time and vacation time, there would be an option to take time off . . ." (Britt Decl., Ex. E)  However, Britt advised in her declaration that "[p]ersonal leaves are granted only if they do not interfere with business needs." (Britt Decl. at ¶ 15)  On December 1, 2003, he requested vacation from December 26 through 27, which was also denied. (Britt Decl., Ex. F)  A December 12, 2003 request for two to three hours off in order to visit the dentist was denied. (Britt Decl., Ex. H)  According to Britt, Johnson took the time off anyway, reporting for his shift more than six hours late. (Britt Decl. at ¶ 20)

> In his declaration, David Cottrell, senior logistics manager for Menlo, averred that:
>
> [o]n December 1, 2003, Mr. Johnson submitted a request to take a vacation day on December 26. At that time, I knew Mr. Johnson had exhausted all available medical leave, sick leave and vacation time. This vacation request was not submitted to me nor have I seen it.
>
> Menlo restricts vacation during busy times of the year. December 2003 was a restricted period. Based on Mr. Johnson's attendance record and the heightened business demands during December, Menlo denied his vacation request.
>
> Mr. Johnson continued to badger me to request a vacation day beyond the number

5

> to which he was entitled.  Mr. Johnson and I had a confrontation where I pointedly told him that he could not take a vacation day in December, I would be able to schedule some time to discuss this with him and he needed to return to work.
>
> *     *     *
>
> At no time during my conversation with Mr. Johnson did I mention his activity with the EEOC.  At that time, I had no functional awareness that he had filed any EEOC Charges.  I remember first hearing about Plaintiff's EEOC activity when he commenced his lawsuit against Menlo.
>
> Mr. Johnson missed work on December 24.  Following this unexcused absence, I was informed that Menlo had decided to terminate Mr. Johnson.
>
> At the time we made the decision to terminate Mr. Johnson, I had no functional knowledgement [sic] of his EEOC activity.

(Decl. of David Cottrell ("Cottrell Decl.") at ¶¶ 1, 3-5, 7-9)

With respect to the Plaintiff's failure to report to work on December 24, Britt averred that "[t]his was a mandatory workday for Menlo employees, who were given a floating holiday to offset working on Christmas Eve.  Mr. Johnson was supposed to report to work at 6 a.m.  However, he failed to call in for work until 9:45."  (Britt Decl. at ¶ 21)

Following a meeting attended by Britt, Cottrell, Tyler-Brown and Greg Reynolds, Johnson's immediate supervisor, at which the decision was made to terminate him for violating the company's attendance policy, a termination letter was issued on December 26, 2003 by Reynolds, stating as follows:

> During the time you have been employed with Menlo Worldwide Logistics, I have had numerous discussions with you regarding your performance, specifically your attendance.  You failed to report to work on December 24, 2003.  Per your request, your scheduled was changed and you were to report to work at 6:00 AM instead of your usual 9:30 AM.  However, you did not call until 5:45AM to let Mary Britt know you would not be in.  This is a violation of work rules and at this time you do not have any unused sick time to apply to this absence.  Therefore, the absence is considered one more unexcused absence.

6

Since January 1, 2003, you have had 10 unexcused absences.

(Britt Decl. at ¶ 23, Def.'s Mot. for Summ. J. and Supp. Mem., Ex. 5)

As the Defendant has satisfied its burden of production, the Plaintiff must at this juncture demonstrate, by a preponderance of the evidence, that Menlo's stated reason for firing him was a pretext for illegal conduct. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 518-19, 113 S.Ct. 2742, 2753-54, 125 L.Ed.2d 407 (1993). He "must introduce admissible evidence to show 'that the proffered reason was not the true reason for the employment decision' and that [retaliation] was the true motivation driving the employer's determination." Barnes v. United Parcel Serv., 366 F.Supp.2d 612, 616 (W.D. Tenn. 2005) (citing Hicks, 509 U.S. at 508, 113 S.Ct. 2742). Pretext may be shown by evidence that the defendant's stated reason had no basis in fact, did not actually motivate the decision or was not sufficient to motivate the employer's action. See Manzer v. Diamond Shamrock Chem. Co. 29 F.3d 1078, 1084 (6th Cir. 1994), reh'g and suggestion for reh'g en banc denied (Sept. 22, 1994). "[E]stablishing that the employer's reason was a pretext requires that a plaintiff do more than simply impugn the legitimacy of the asserted justification; in addition, the plaintiff must also adduce evidence of the employer's [retaliatory] animus." Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 804 (6th Cir. 1994). As the Supreme Court observed in Hicks, "[t]hat the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." Hicks, 509 U.S. at 523-24, 113 S.Ct. at 2756. That is, "it is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation." Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133, 147, 120 S.Ct. 2097, 2108, 147 L.Ed.2d 105 (2000) (citing Hicks, 509 U.S. at 519, 113 S.Ct. 2742) (emphasis in original).

7

The Plaintiff does not clearly deny that the facts set forth in the documents submitted by the Defendant are incorrect or inaccurate. However, he suggests there was a "discrepancy" having to do with a workers compensation claim in August that presumably might have altered the number of absences recorded by the employer. Johnson not only proffers no evidence to support this vague assertion, but makes no effort to explain why he failed to bring the perceived discrepancy to the immediate attention of Menlo, particularly in light of the warning contained in Britt's August 28, 2003 letter that he could be terminated for excessive absenteeism. In addition, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir.2001). Nothing whatsoever has been presented to the Court in support of an argument that Menlo did not have an honest belief in the reason given for Johnson's termination.

The Plaintiff also suggests that the December 2003 confrontation with Cottrell was intended to set off the anxiety disorder from which he suffered, cause him to miss work, and provide a reason for Menlo to fire him for absenteeism. When asked in his deposition how the conversation with Cottrell was retaliatory, Johnson replied thusly:

> Because why would you cause an uproar with someone you know that's under psychiatric care? I'm sure he is the director, so he knows firsthand that I'm still under current doctor's care for psychiatric treatment for my anxiety levels. I talked to Mary, whatever, it doesn't have to be directly with David, but I'm sure he was made aware of that. And yet and still he reacted the way that he reacted that set off extreme levels of anxiety that caused physical reactions to where I could not function for the rest of that day and then the next day where I had to go home. I tried to get off that medicine whatever because not trying to be dependent but he caused that which caused me to not be able to function the next day.

(Cont. Dep. of Rodney Johnson at 150-51) Cottrell offered in his declaration that "[i]t was never

8

my intent to cause Mr. Johnson any problems relating to his anxiety disorder, only to direct him to return to work. My only intent was to direct Mr. Johnson to return to work during an extremely busy workday." (Cottrell Decl. at ¶ 6) Interestingly, a document provided by the Plaintiff himself paints a picture different from the one he now wishes the Court to believe. The document is in the form of a one-and-a-half page, single spaced diatribe, apparently submitted by Johnson during the EEOC investigation, about how rude, unprofessional, obnoxious, insensitive, Cottrell was to him. It ends with the following statements:

> David Cottrell's attitude, character and his belligerent accusation is totally unacceptable and I am highly offended and disturbed by his immature conduct and his apology is needed in reference to his actions.
>
> This event is without cause and without merit and is labeled as a deceitful and deliberate act of harassment and to belittle the employee, Rodney V. Johnson.
>
> If David Cottrell did not have time to talk he should have said it, and if he felt the scenario was to [sic] personal he should have kept his opinion to himself.
>
> This and all adverse encounters are documented for future evaluations and recommendations and as always this event will be given to the appropriate delegates.

(Pl.'s Resp to Bankr. Proceedings, Mot. Denying/Set Aside Def.'s Mots. for Summ. J. & Mot. to Dismiss/Leave, Ex. N) No mention was made in the letter that the encounter caused Johnson to suffer an anxiety attack or any similar reaction, other than perhaps anger.

The Plaintiff also argues that Menlo failed to issue warnings in accordance with its progressive discipline policy. A review of the document provided by the Plaintiff, however, indicates simply that, in the event of excessive employee absenteeism, the matter "*should* be mutually discussed to determine both cause and required improvement." (Pl.'s Resp to Bankr. Proceedings, Mot. Denying/Set Aside Def.'s Mots. for Summ. J. & Mot. to Dismiss/Leave, Ex. J) (emphasis added) If counseling does not correct the problem, the policy states that the employee

9

*should* receive a letter of instruction. (Pl.'s Resp to Bankr. Proceedings, Mot. Denying/Set Aside Def.'s Mots. for Summ. J. & Mot. to Dismiss/Leave, Ex. J) (emphasis added) The use of the word "should" suggests that these are guidelines only and not mandatory. Moreover, the policy goes on to state that "[c]orrective action . . . may range from written warnings to immediate dismissal." (Pl.'s Resp to Bankr. Proceedings, Mot. Denying/Set Aside Def.'s Mots. for Summ. J. & Mot. to Dismiss/Leave, Ex. J) Thus, there is no evidence of a *requirement* that Menlo provide progressive discipline. Finally, no evidence has been presented to indicate that Johnson was anything other than an at-will employee. As a district court in this Circuit has reflected,

> Tennessee is an employment-at-will state. . . . Consequently, the Court's role is not to determine whether an employer's decision to fire an employee was wise, right or otherwise. An employee may allege he has been subjected to a great deal of mistreatment by a supervisor. This Court does not condone such behavior; yet, even assuming the allegations of poor treatment by one's employer are true, a court has no role in curing those wrongs unless the employer's actions violate the law.

Anderson v. Mead Johnson Nutritional Group, Bristol-Myers Squibb Co., 910 F.Supp. 376, 380 (E.D. Tenn. 1996), aff'd, 107 F.3d 870 (6th Cir. 1997). As the Plaintiff has completely failed to "do more than simply impugn the legitimacy of the asserted justification," by "adduc[ing] evidence of the employer's [retaliatory] animus," pretext has not been shown. See Pierce, 40 F.3d at 804.

## CONCLUSION

Based on the foregoing, the Defendant's motion for summary judgment is GRANTED and this matter is DISMISSED in its entirety. Further, the Clerk of Court is directed to deny as moot any and all remaining outstanding motions and the Case Manager is to remove all settings in this case from the Court's calendar.

IT IS SO ORDERED this 25th day of May, 2006.

                                                             s/ J. DANIEL BREEN
                                                             UNITED STATES DISTRICT JUDGE